## WALKER v. WILKINSON.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1924.)

No. 4165.

**1. Bankruptcy ⊂⊃159—Elements of recoverable "preference" stated.**

The trustee in bankruptcy, to establish a recoverable "preference," must show a transfer of property or money to the creditor, during insolvency and within four months of bankruptcy, that the creditor had reasonable grounds for believing that the bankrupt was then insolvent, and that the effect of the transfer was to give the creditor a greater percentage of his debt than other creditors of the same class.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

**2. Bankruptcy ⊂⊃165(1)—Preference must have effected unequal distribution of bankrupt's assets among creditors of same class.**

A transaction which, in its entirety, does not effect an unequal distribution of the bankrupt's assets among creditors of the same class, does not constitute a voidable preference.

**3. Bankruptcy ⊂⊃165(1)—Payment to creditor from source to which other creditors of same class have no right to resort does not constitute a "preference."**

The payment of one creditor from a source to which other creditors of the same class have no right to resort does not constitute a preference, but the payment or transfer, to be preferential, must be one that diminishes the fund to which creditors of the same class can legally resort for the payment of their debts, and must make it impossible for other creditors to obtain as great a percentage as the favored one.

**4. Bankruptcy ⊂⊃154, 169—Rule as to preferred creditor's right of set-off as against recovery of preference stated.**

A creditor cannot set off against his liability for the return of preferential payments, under Bankruptcy Act, § 60a (Comp. St. § 9644), the original debt on which the payments were applied, but may set off a debt where the effect of allowing the offset does not disturb equality of distribution among creditors of the same class, or, under section 60c, may set off any new credit extended to bankrupt, after receipt of preferential payments, without security and for property which became part of bankrupt's estate, and which remained unpaid at date of adjudication.

**5. Bankruptcy ⊂⊃169—Alleged preferred creditor held entitled to set off, against preferential payments, amount loaned to bankrupt after preferential payments were made.**

In action by trustee in bankruptcy to recover preferential payments, the defendant was entitled to set off amount loaned to bankrupt without security, after preferential payments in an amount in excess of the amount of such loan had been made, under Bankruptcy Act, § 60c (Comp. St. § 9644).

**6. Bankruptcy ⊂⊃154—Defendant, sued for preferential payments, held entitled to set off amount loaned to bankrupt out of which bankrupt made payments.**

In an action by trustee in bankruptcy against guarantor of notes payable to a bank to recover alleged preferential payments thereon, the guarantor was entitled to set off the amount of loan made to bankrupt before bankrupt paid bank, if the payments to the bank were made with funds received from guarantor, since in such case there was no depletion of the fund available for general creditors by reason of the alleged preferential payments to the bank.

**7. Bankruptcy ⊂⊃304—Whether bankrupt made preferential payments with money loaned by defendant held for jury.**

In action by trustee in bankruptcy against guarantor on notes to recover alleged preferential payments to bank payee, in which the guarantor sought to set off against liability for preferential payments an amount

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

loaned to the bankrupt before bankrupt made alleged preferential payments, evidence *held* to make the question of whether the bankrupt made alleged payments out of the money loaned to the bankrupt by the guarantor a question for the jury.

In Error to the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Action at law by W. W. Wilkinson, trustee of the Walker Grain Company, bankrupt, against J. L. Walker. To review the judgment rendered for the plaintiff, both parties bring error. Reversed and remanded.

See, also, 295 Fed. 120, 123.

W. E. Spell, of Waco, Tex., J. A. Templeton and Clay Cooke, both of Fort Worth, Tex., and G. A. Stultz, of Wichita, Kan., for plaintiff *in error.*

Stanley Boykin, H. C. Ray, and Geo. M. Conner, all of Fort Worth, Tex. (George M. Conner, Capps, Cantey, Hanger & Short, and Boykin & Ray, all of Fort Worth, Tex., and Orestes Mitchell, of St. Joseph, Mo., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The defendant in error was the duly appointed and qualified trustee in bankruptcy of the Walker Grain Company, and in that capacity instituted this suit at law in the District Court of the United States for the Northern District of Texas, to recover from the plaintiff in error certain voidable preferential payments. The alleged preferences were based upon the payment within four months of bankruptcy of two notes, aggregating $85,000, executed by the bankrupt to the American Exchange National Bank of Fort Worth, the payment of which was alleged to have been guaranteed by the plaintiff in error. The plaintiff in error was the president and principal stockholder of the bankrupt, and it was charged that he procured the payments to be made by the bankrupt, in order to relieve his liability upon the guaranty, while the bankrupt was insolvent, and when he had reasonable grounds for believing it to have been insolvent. The trial was had before the District Judge and a jury, and resulted in a verdict in favor of the defendant in error for $56,484.65, with interest from the date of suit. Both parties sued out writs of error to this judgment. In view of the conclusion reached by us, it is unnecessary for us to consider the cross-assignments of error, and but one of the 43 errors assigned upon the direct writ of error.

The ninth assignment of error upon the original writ of error is based upon an exception taken by the plaintiff in error to the oral charge of the District Judge, because it failed to submit to the jury as an issue the claim of the plaintiff in error to an offset, pleaded in his answer, in the sum of $32,500, the amount of two loans made by the plaintiff in error to the bankrupt, one of $30,000, April 24, 1918, and one of $2,500, on July 6, 1918. Whether the issue of offset should have been submitted to the jury depends upon how the offset affected the question and extent of the preference claimed to have been re-

ceived by the plaintiff in error through the payments of the bankrupt's notes to the bank out of his assets.

[1] To establish a recoverable preference the trustee must show (1) a transfer of property or money to the creditor by the bankrupt, (2) while the bankrupt was insolvent and within four months of bankruptcy; (3) that the creditor had reasonable grounds for believing the bankrupt insolvent at the time he received the transfer; and (4) that the effect of the transfer was to give the creditor a greater percentage of his debt than other creditors of the same class secured.

[2, 3] The purpose of the law of preferences is to secure an equal distribution of the bankrupt's assets among his creditors of like class. If a transaction, in its entirety, does not interfere with this purpose of the law, it does not constitute a voidable preference. The fact that one creditor is paid in full from a source, to which other creditors have no right to resort, does not entitle other creditors to complain or the trustee to recover the amount so received. The transfer or payment must be one that diminishes the fund to which creditors of the same class can legally resort for the payment of their debts, and to an extent that makes it impossible for such other creditors to obtain as great a percentage as the favored one, in order that the transaction constitute a preference.

[4] It has been decided that, in an action by a trustee to recover money paid a creditor by way of preference, the creditor cannot set off against his liability for the return of the preferential payments the original debt on which the payments were applied. Rotan Grocery Co. v. West, 246 Fed. 685, 158 C. C. A. 641; Mechanics' Bank v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121. The reason is, to permit this to be done would defeat the right to recover the preference and render the statute futile. In such a case the transaction is single, and results in a depletion of the fund that would otherwise have gone to creditors to the extent of the preferential payments. Allowing the creditor to set off the debt due him against the payments received by him would leave the preference unremedied. In this class of cases, the right to offset is denied, because the estate has been depleted to the detriment of creditors of like class, and to allow the right of set-off would perpetuate the depletion.

There is a class of cases in which the statute itself allows an offset against the recovery of the preference. Section 60c of the Bankruptcy Act (Comp. St. § 9644) authorizes the creditor to set off against the recovery of preferential payments any new credit thereafter extended in good faith by the preferred creditor without security, and for property which becomes part of the debtor's estate and remains unpaid at the date of adjudication. The reason for the provision is that the debtor's estate is enriched by the receipt of the property for which the new credit was extended, and the fund for distribution among creditors is impaired only to the extent of the difference between the value of the preference received and the value of the property afterwards sold the debtor for the new credit. This is in line with the purpose of the law to require the preferred creditor to surrender only the net amount of the benefit he received in excess of that received by other creditors of his own class.

The right of offset as against the recovery of a preference given by section 60c is not exclusive. In any case ih which the result of allowing 'the offset does not disturb, but promotes, equality of distribution among creditors of the same class, it is proper; and the effect of allowing it, in this respect, is to be determined by the entire transaction between the creditor and the bankrupt. In the case of Gans v. Ellison et al., 114 Fed. 734, 52 C. C. A. 366, the Circuit Court of Appeals for the Third Circuit held an offset to be permissible, independent of section 60c, using this language:

"But the case is open to another view equally favorable to the appellees. Upon the true interpretation of paragraph 'a' of section 60, the preference in such case as this is the net gain to the creditor upon the transactions between him and the debtor. The net balance in favor of the creditor is the real preference under the law. For only to the extent of such net gain does the creditor 'obtain a greater percentage of his debt than any other creditors of the same class.' And so, on the other hand, only to the amount of the net gain to the creditor is the estate of the debtor impaired."

If both sides of the account be not considered, the effect would be to require the creditor to make a double surrender of his preference, in that he is required to give up the payments received and to lose the new credit extended, with the result that he fares worse, instead of better, than other creditors of his class. The Bankruptcy Law aims at equality of treatment and no more. If the result of all the outstanding transactions between the bankrupt and the preferred creditor, up to the time of bankruptcy, shows no advantage obtained by the preferred creditor over other creditors of the same class, out of the fund for distribution, there is no preference. In such a case the creditor is not required to restore. If, in order to prevent this, it is necessary to allow the creditor to avail of an offset, as against the preferential payment, in a suit by the trustee for that purpose, this would be permissible in equity—and bankruptcy is equity—regardless of the technical rules relating to set-off. There is presented rather the question of an absence of an essential factor in a preferential transfer, viz. an advantage gained by one creditor at the expense of his co-creditors of equal rank. Bankruptcy is not concerned with upsetting transactions as preferences, the net result of which leaves the creditor in no more favorable attitude, respecting the fund out of which creditors of his class can look for payment, than other creditors. These are the tests that should be applied in determining in this case whether or not the offset of $32,500, representing the loans by plaintiff in error to the bankrupt, should have been allowed.

The notes upon the payment of which the trustee bases his right to recover were executed by the bankrupt in April, 1918; the alleged preferential payment began May 9th, and ended July 9th of the same year; the first loan made by plaintiff in error to the bankrupt occurred on April 24th, and its amount was $30,000; the second loan occurred July 6th, and its amount was $2,500. The petition in bankruptcy was filed early in August, 1918, within four months of the first payment: No part of either loan had been repaid up to the time of bankruptcy; the payment on the notes of the bankrupt must have been made either from the proceeds of the two loans or from the proceeds of the resale of commodities purchased with the proceeds of the loans.

[5-7] From this it appears that the estate of the debtor was benefited by the proceeds of the two loans, either by an increase in its assets or by the payment of its indebtedness to the bank. It is true the disposition of the proceeds of the loans is not specifically traced either into the checks that paid the notes of the bankrupt or into the possession of the trustee in bankruptcy. The payments complained of as being preferential were, however, made out of the account to which the loans were deposited. In the case Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190, construing section 60c of the Bankruptcy Act, the Supreme Court held that one who, after receiving a preferential payment from the bankrupt, loans him money in good faith without security, which actually passes into the possession of the bankrupt, is entitled to have the amount loaned set off against the amount recoverable by the trustee, though it be not shown that the proceeds of the subsequent loan remained with the bankrupt until bankruptcy intervened, and came into the possession of the trustee. The second loan of $2,500 was made after payments, largely in excess of that amount, had been made upon the notes of the bankrupt, and is a new credit within the meaning of section 60c. The first loan of $30,000 antedated all the payments. If this loan furnished the payments on the notes, the right to set it off against the recovery sought by the trustee would be as clear as would be the trustee's lack of remedy, if the plaintiff in error, instead of loaning that sum to the bankrupt, had paid it to the holder of the notes direct, as a credit on the notes.

Creditors could not complain of a reduction of the bankrupt's indebtedness, which was accomplished without depleting the bankrupt's assets. There was evidence from which the jury might have inferred that the loans did provide the payments on the notes. The notes of the bankrupt were given to take up its overdrafts at the bank. The subsequent condition of the business indicates that the payments were not made from the current earnings of future business. The only other possible source of such payments was the money furnished the bankrupt by the loans of the plaintiff in error. If the bankrupt was unable to pay its overdrafts out of current business, it was likewise unable to take up its notes from that source. There is no real difference, upon the question of preference and offset, whether the plaintiff in error paid the bank direct or loaned the bankrupt the funds from which the bank was paid. In neither event was the estate of the debtor depleted. · In the first case, nothing was taken from the assets of the debtor to pay the notes. In the second case, $32,500 was contributed to the assets of the debtor by the plaintiff in error, and withdrawn to pay the notes, causing no depletion of assets.

To the extent of the loans the plaintiff in error was not advantaged, by the payment of the notes, over other creditors of the same class; to that extent there was no impairment of the fund for distribution among general creditors, and no detriment to them. The extent of the preference, if one existed, is to be measured by the difference between the payments on the notes and the amount of the two loans. As the real preference was represented by this net balance, the recovery of the trustee should be limited to it, and this, and no more, would·

be accomplished by allowing, as a set-off against the claimed liability of the plaintiff in error for receiving preferential treatment, the amount that he is shown to have contributed by his loan to the bankrupt to the payments on which the preferences are based. Taking into consideration both transactions, the payments on the notes and the loans by the plaintiff in error, the net amount of the preference would be represented by the difference between the payments and the loans, or such part of them as went into the note payments or enhanced the estate of the debtor. The issue presented by the plea of offset should have been submitted to the jury, and the judgment must be reversed for that reason.

The plaintiff in error contends that payments on the notes were not preferential, because the American Exchange National Bank had security in the way of a lien on certain commodities, pledged to it to secure the notes, and that the payments complained of as preferential were made from amounts realized by the bankrupt from the collateral, to which it was entitled because of its lien as against the unsecured creditors of the bankrupt. We do not think that the record establishes a lien in favor of the bank, which would prevail as against the trustee in bankruptcy, or prevent payments, otherwise preferential as to the plaintiff in error, from being so.

The case presented by the record is one of preferential transfer only, and not of a transfer with intent to hinder, delay, or defraud creditors of the bankrupt. The issues of fact upon retrial should be confined to those of preferential payments and of offset, eliminating that of transfer with the intent to hinder, delay, or defraud creditors. We refrain from discussing the other assignments of error, as the points presented may not arise upon a retrial of the case. Upon the cross-assignment of error, we think the District Judge did not err in refusing to direct a verdict for the plaintiff.

The judgment of the District Court is reversed, and the cause remanded for further proceedings in conformity herewith.

Reversed and remanded.